Statement of the Case.
MONROE, J.
Plaintiff alleges that upon April 17, 1899, he purchased certain real estate in this city, which he describes, and that he has been in actual possession thereof since the date of his purchase; that E. O. Dueros and A. Delavigne, conspiring to slander Ms title, on or about May 28, 1901, obtained from the State Auditor and caused to be registered some 14 acts, whereby that officer undertook to sell Mm said property as having been adjudicated to the state for the taxes of 1885, assessed in the name of the Beaufeu Brick Manufacturing Company, but that said assessment was void for the reason that no such company then existed or owned said property, and the property was not correctly described.
He further alleges that the owners were never notified of the proposed sale or adjudication; that the property was not legally advertised; that the state acquired no title, and could convey none; and that he has been damaged by the acts of said Dueros and Delavigne in the sum of $2,100. He therefore prays that the state tax collector and the de *194 fendants already mentioned be cited, and that there be judgment awarding him damages and decreeing the nullity of the sale to the state which is relied on as the basis of the auditor’s said acts.
The defendant Delavigne disclaims title, and there was judgment by default against the tax collector. The defendant Dueros sets up title to the property in question, and prays to be decreed the owner thereof. He also objects that the action to annul will not lie without a previous tender of taxes paid, etc., pleads prescription, and prays that in any event he have judgment for the amount disbursed by him.
It appears from the evidence in the record that upon February 17, 1877, in the matter of A. Delavigne v. The Beaujeu Brick Manufacturing Company, No. 6,430 of the docket of the Sixth District court for the parish of Orleans, the sheriff adjudicated to F. D. Brinckman the following described property, to wit:
Tract No. 3, measuring “nine hundred and eleven feet seven inches and four lines front on each of Johnson (projected) street and Florida avenue (projected) by nineteen hundred and fifty one feet eleven inches and one line in depth, between parallel lines, on the lines which divide it from the Ursulines Convent and the property of the Congregation of the Holy .Cross.”
Brinckman died in November, 1880. His succession was at once opened, and by judgment of the civil district court of date April 12, 1899, his widow and heirs were put in possession of his estate, including the above-described property, which, upon April 17, 1899, they sold, by practically the same description, to the plaintiff now before the court. The plaintiff, however, in his petition, describes the property as having “nine hundred and eleven feet seven inches and four lines (911' 7" 4'") front on Celestine, now Johnson, street, the same on Florida avenue, by two thousand seven hundred and thirty-five feet (2,735), between parallel lines, on the line which divides it 'from the Ursulines Convent on the upper side, and the same measurement, twenty-seven hundred and thirty-five feet (2,735), more or less, on the lines which divide it from the lands of the Society of the Holy Cross, which tract extends in a solid, unbroken tract from Florida avenue to Johnson street and between Ursulines Convent and the upper side- lands of the Society of the Holy Cross.” The procés verbal of the sale to Brinckman mentions a plan by C. A. D’Armas, surveyor, of date April 24, 1875, deposited for reference in the office of the sheriff, which has not been produced or accounted for; but the writ which the sheriff held describes the property, and directs the sale to be made “in conformity with a plan drawn by Messieurs Pilie & Murray, architects and surveyors, on the 4th day of March, 1808, now in the possession of said Alfred • Delavigne,” and Mr. Delavigne, who was the seizing creditor, testifies as a witness in this case that the Pilie & Murray plan, which shows the property as subdivided by streets into squares, and the squares into lots, was the one actually used for the purpose, at least, of showing the tracts into which the sheriff had divided the property. Nor is there anything in the record to indicate that the D’Armas plan differed from the Pilie & Murray plan, either as to the subdivision or as to the outside boundaries of the property. Taking the Pilie & Murray plan, then, as a guide in this latter respect (the question as to the subdivision vel non of the property into squares and lots not being necessarily involved in this case), we find that between “Johnson (projected) street and Florida (projected) avenue, being the opposite, outside boundaries, parallel with the river, of the entire property, there were included five squares, which, assuming the squares and intervening streets to have been of the average dimensions, would about give the 1551' 11" T" in depth called for by the plaintiff’s title.
*195 We find also that Oelestine street'was at that time (at the date of the sale of Brinckman) two squares nearer the river and farther from Florida avenue than Johnson street; and we are informed through the uncontradicted testimony of Mr. Pilie, a surveyor, sworn as a witness for the defense, that the name of the then Oelestine street has been changed to Johnson street by a city ordinance passed within the last few years, and, of course, long since Brinckman, and possibly since the plaintiff, acquired his title.
The plaintiff, who shows that he has been in actual possession of the property purchased by him since the date of his purchase, and of more besides, therefore discloses no title whatever to the land designated on the Pilie & Murray plan as squares 47, 48, 49, 50, 51, and 52, bounded by Johnson, Tennessee, Oelestine, and Sisters streets, and designated on the Braun & Fitzner plan (also filed in evidence) as squares 989, 990, 991, 1093, 1094, and 1095, bounded by Liberal (shown to have been called Johnson), Tennessee, Oelestine, and Sisters streets. As to so much of the property made the subject of this litigation as is designated on the Pilie & Murray plan as squares 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, bounded by Florida avenue, Tennessee, Johnson, and Sisters streets, and on the Braun & Fitzner plan as squares 1136, 1137, 1138, 1244, 1245, 1246, 1290, 1291, 1292, 1413, 1414, 1415, 1460, 1461, and 1462, bounded by Florida avenue, Tennessee, Liberal, and Sisters streets, the evidence leaves no room for doubt that the proceeding under which it was adjudicated to the state in February, 1885, was based on an assessment made in the name of the Beaufeu Brick Manufacturing Company which had never existed, and that the Beaujeu Brick Manufacturing Company which had at one time owned the property, had been devested of its title by the sale made to Brinekman in February, 1877, and registered in December of that year. It is equally beyond doubt that Brinekman had died in 1880, and that his succession had been opened, and an inventory, including and describing the property in question, had been taken and filed in court in January, 1881. There was therefore no legal basis for the sale by the tax collector, and the state thereby acquired no title to the property, and could have conveyed none to the defendant
Opinion.
In view of the facts of the ease as thus set forth, and of the radical character of the nullities in the titles set up by the defendant Ducros, his demand for reimbursement and his pleas of prescription cannot be sustained. Upon the other hand, the judgment appealed from must be modified, because in decreeing that plaintiff “be, and he is hereby, recognized as being in the lawful possession, claiming as owner, and as such quieted therein,” of the property to which he has disclosed no color of title, it has an insufficient basis to rest on, and because in decreeing him to be “the absolute owner and possessor of all the residue of the' land in dispute between said Liberal street and Florida Walk” it goes beyond the prayer of the petition, which, after the prayer for damages, reads, “And it be decreed that the sale to the state mentioned in the copies of the auditor’s deeds annexed be declared null and void, and for general relief.” Moreover, the plaintiff is claiming the land as a “solid, unbroken tract,” whereas it appears to have been sold to Brinekman according to a plan upon which it appeared to be divided by streets into squares, and the city ought to have an opportunity to be heard in the determination of the question whether those streets have or have not been opened by dedication. The plaintiff’s claim for damages is not sustained, and was properly rejected.
For the reasons assigned it is ordered, adjudged, and decreed that, in so far as it *196 recognizes plaintiff as being in lawful possession and quiets him in possession “of the area of ground contained between the projected, but not laid out, streets known on the city maps as Liberal and Celestine streets,” and in so far as it recognizes plaintiff as “absolute owner and possessor of all the residue of the land in dispute between said Liberal street and Florida Walk,” and so far as it decrees the nullity of the auditor’s deeds to said land lying between said Liberal and Celestine streets (as shown by said city map known as the “Braun & Fitzner Map”), the'judgment appealed from be annulled, avoided, and reversed; and it is further ordered, adjudged, and decreed that in all other respects sáid judgment be affirmed, the costs of the appeal to be paid by the plaintiff.